# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

## NO. 09-3393

### UNITED STATES OF AMERICA

**Appellee**

v.

### SHAMIEK HYNSON

**Appellant**

_____

### BRIEF AND APPENDIX VOLUME I (Pages 1-20)
### FOR APPELLANT
_____

PAUL J. HETZNECKER
1420 WALNUT STREET
SUITE 911
PHILADELPHIA, PA 19102
(215) 893-9640
ATTORNEY FOR APPELLANT

# TABLE OF CONTENTS

PAGE

Table of Citations------------------------------------------------------------ iii-vi

Statement of Subject Matter and Appellate Jurisdiction--------------- vii

Standard of Review---------------------------------------------------------- vii

Statement of Related Appeals---------------------------------------------- vii

Statement of the Issues----------------------------------------------------- viii

Statement of the Case-------------------------------------------------------- 1-8

Summary of Argument------------------------------------------------------- 9

Argument---------------------------------------------------------------------- 10-30

Conclusion-------------------------------------------------------------------- 31

Combined Certifications --------------------------------------------------- 32

Certificate of Service------------------------------------------------------- 33

# TABLE OF CITATIONS

**Page No.**

## CASES CITED

Bumper v. North Carolina, 391 U.S. 543, 548 (1968)........     11

California v. Greenwood, 486 U.S. 35, 39 (1988).............     11

Do v. United States, 513 U.S. 993, 115 S. Ct. 496,
     130 L.Ed 2d 406 (1994).......................................     12

Florida v. Royer, 460 U.S. 491 (1983)............................     15

Georgia v. Randolph, 547 U.S. 103, 106 (2006)...............     10

Government of the Virgin Islands v. Pinney, 967 F.2d 912
     (3rd Cir. 1992).......................................................     28

Huddleston v. United States, 485 U.S. 681, 108 S. Ct. 1496,
     99 L.Ed 2nd 771 (1998)...........................................     19

Illinois v. Rodriguez, 497 U.S. 177, 181 (1990)................     10

Kyllo v. United States, 533 U.S. 27, 31 (2001)....................     10

Minnesota v. Carter, 525 U.S. 83 (1998)...........................     12

Minnesota v. Olson, 495 U.S. 91, 96-97 (1990)..................     12

Moran v. Burbine, 475 U.S. 412, 421 (1986)......................     14

Payton v. New York, 445 U.S. 573 (1980).........................     10

Rakas v. Illinois, 439 U.S. 128, 140 (1978)........................     11, 12

Rawlings v. Kentucky, 448 U.S. 98, 104 (1980).................     12

Schneckloth v. Bustamonte, 412 U.S. 218 (1973)...............    10, 13

United States v. Adam, 534 F.2d 31 (3rd Cir. 1996)............    28

United States v. Arciniego, 569 F.3d 394 (8th Cir. 2009)......    14

United States v. Baker, 221 F.3d 438 (3d Cir. 2000)...........    12

United States v. Barnes, 49 F. 3d 1144 (6th Cir. 1995).........    21

United States v. Blyden, 964 F.2d 1375( 3rd Cir. 1992).......    19, 20, 21

United States v. Bowie, 232 F.3d 923 (D.C. Cir. 2000)........    20

United States v. Butch, 256 F.3d 171 (3rd Cir. 2001)............    vii, 19

United States v. Coles, 437 F.3d 361 (3d Cir. 2006)............    10

United States v. Cross, 308 F.3d 308 (3rd Cir. 2002)............    19, 21, 27,
                                                                    28

United States v. Daraio, 445 F.3d 253 (3rd Cir. 2006)............    25

United States v Driggs, 823 F.2d 52 (3rd Cir. 1987)..............    26

United States v. Echeverri, 854 F.2d 638 (3rd Cir. 1998)......    19, 28

United States v. Gibbs,, 190 F.3d 188 (3rd Cir. 1999)..........    19, 20

United States v. Givan, 320 F.3d 452 (3rd Cir. 2003)............    14, 26

United States v. Haas, 184 Fed. Appx. 230 (3rd Cir. 2006)....    27

United States v. Hernandez, 975 F.2d 1035 (4th Cir. 1992).....    27

United States v. Himelwright, 43 F.3d 777 (3rd Cir.1994)......    18

United States v. Jemal, 26 F.3d 1267 (3rd Cir. 1994).............    19

United States v. Kiendra, 663 F.2d 349 (1st Cir. 1981)..........    27

United States v. Kim, 27 F.3d 947, 955 (3d Cir.1994)..........    14

United States v. King, 2010 WL 438417 (3d Cir. 2010)........    12

United States v. Lambert, 995 F.2d 1006 (10th Cir.).............    21

United States v. Lockett, 406 F.3d 209 (3d Cir. 2005).........    11

United States v. Matlock, 415 U.S. 164 (1974)...................    10

United States v. Morales, 861 F.2d 396, 399 (3d Cir. 1988)...    10

United States v. Morley, 199 F.3d 129 (3rd Cir. 1999)..........    19

United States v. Mosley, 454 F.3d 249, 253 n. 5 (3d Cir. 2006)..    12

United States v. Murray, 103 F.3d 310 (3rd Cir. 1997)............    20, 29

United States v. Price, 558 F.3d 270 (3d Cir. 2009)................    10, 11, 13, 14

United States v. Rodriquez, 497 U.S. 177...............................    10

United States v. Salehi, 187 Fed.Appx. 157, 164 (3d Cir. 2006)...    15

United States v. Sampson, 980 F.2d 883 (3rd Cir. 1992)...............    18, 28

United States v. Sriyuth, 98 F.3d 739 (3rd Cir. 1996)...................    18

United States v. Stearn, 597 F.3d 540 (3d Cir. 2010)....................    11

United States v. Universal Rehabilitation Services (PA),
    205 F.3d 657 (3rd Cir. 2000) en banc................................    26

United States v. Vanvliet, 542 F.3d 259, 264 (1st Cir. 2008).......    14

United States v. Williams, 417 F.3d 373, 376 (3d Cir. 2005).......   vii, 11

United States v. Williams, 900 F. 2d 823 (5th Cir. 1990)..............   19

United States v. Wong, 703 F.2d 65 (3rd Cir. 1983)....................   26

## **STATUTES CITED**

28 U.S.C. Section 1219,  3742 .................................................   vii

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The original jurisdiction of the District Court was based upon 18 U.S.C. Section 1321 which provides for the exercise of original jurisdiction by the District Court in all matters involving offenses against the laws of the United States.

The appellate jurisdiction of this Court is based on 28 U.S.C. Section 1219, 3742 and Rule 4(b) of the Federal Rules of Appellate Procedure.

## STANDARD OF REVIEW

An appellate court reviews the district court's factual determinations for clear error and exercises plenary review over the application of the law to those facts. United States v. Williams, 417 F.3d 373, 376 (3d Cir. 2005).

An appellate court reviews the District Court's decision to admit evidence under Rule 404(b) for an abuse of discretion, which may be reversed only when clearly contrary to reason and not justified by the evidence. United States v. Butch, 256 F.3d 171, 175 (3d Cir.2001).

## STATEMENT OF RELATED APPEALS

There are related appeals. United States v. Prince Isaac, No. 05-576.

## STATEMENT OF THE ISSUES

I.    WHETHER THE LOWER COURT ERRED IN DENYING
APPELLANT'S MOTION TO SUPPRESS THE PHYSICAL
EVIDENCE RECOVERED FROM 705 LANSING STREET, UTICA,
NEW YORK.

II.   WHETHER THE LOWER COURT ERRED IN ADMITTING THE
EVIDENCE OF "OTHER CRIMES" EVIDENCED UNDER
FEDERAL RULE OF PROCEDURE 404(B) AND 403 AND
WHETHER SUCH ADMISSION DEPRIVED THE APPELLANT OF
A FAIR TRIAL

## STATEMENT OF THE CASE

### Procedural History

Appellant, Shamek Hynson, was charged in a superseding indictment with conspiracy to distribute more than fifty (50) grams of ("crack") cocaine , in violation of 21 U.S.C. §846; engaging in continuing criminal enterprise in violation of 21 U.S.C. §848; distribution of ("crack") cocaine, in violation of 21 U.S.C. §841(a)(1), (b)(1)(C); distribution of ("crack") cocaine, in violation of 21 U.S. §841(a)(1), (b)(1)(B); using and carrying a firearm during the commission of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1), (b)(2); and convicted felon in possession of a firearm, in violation of 18 U.S.C. §922(g)(1).

Numerous pre-trial motions were filed on behalf of the Appellant. Among the motions was a Motion to Suppress Physical Evidence challenging the admission of the contraband recovered from an apartment in Utica, New York. Specifically, the physical evidence that was recovered were firearms, ammunition as well as illegal narcotics. Among the pre-trial motions, Appellant filed a motion *in limine* to exclude all evidence of other uncharged crimes or bad acts the government sought to introduce during their case in chief. The evidence Appellant sought to exclude involved several straw purchases of firearms in both North and South Carolina, as well as Appellant's previous drug conviction.

Hearings were held over the course of four days, November 6, 2006, May 8, 2007, August 7, 2007 and August 10, 2007.

On September 10, 2007 the Honorable Juan R. Sanchez issued an order excluding Appellant's drug conviction, but permitting the government to admit the evidence that was subject to a search in Utica, New York as well as the straw purchases by Appellant in two other jurisdictions.

On September 10, 2007 Appellant's trial commenced before the Honorable Juan R. Sanchez and a jury. Appellant was tried along with his co-defendant and brother, Prince Isaac, and another co-defendant, Dwight Williams. On September 21, 2007 the jury returned a guilty verdict on all charges. Subsequent to trial and prior to sentencing, Appellant filed a motion requesting that present counsel be removed and that he be permitted to proceed *pro se*. On August 10, 2009, Appellant appeared before the Honorable Juan R. Sanchez and was sentenced to life in prison with sentences on all other counts to run concurrently. Appellant filed a *pro se* motion for judgment of acquittal on June 11, 2009 and Judge Sanchez issued a memorandum and Order vacating Appellant's conviction on one of the 924(c) counts. The judge affirmed the conviction on all other counts. Appellant filed a timely notice of appeal on August 12, 2009. Subsequent to his filing the notice of appeal present counsel was reappointed for

purposes of pursuing his appeal.

## Factual History

The evidence against Appellant in this case was built principally upon the testimony of several cooperating witnesses, two of whom were his former girlfriends. The testimony regarding Appellant centered on the weeks Appellant lived with his co-defendant Prince Isaac in Lancaster, Pennsylvania.  During the government's case-in-chief evidence was presented that Appellant purchased guns in North and South Carolina through straw purchasers. Appellant transported these firearms to his brother Prince Isaac in Lancaster, Pennsylvania, to be used to assist him in his drug distribution network.   This evidence is the primary focus of Appellant's challenge to his conviction and was presented through the testimony of two of his former girlfriends, Tolanda Williams and Shanika Wilson.  (A494-550; A555-583; A599-646; A648-754)

Tolanda Williams testified that she had been involved in a romantic relationship with Appellant since 1999.   In April and October of 2004, Williams testified that she purchased four or five different handguns for the Appellant. (A496-498)  Appellant would wire Ms. Williams the money for the purchases or he would pay her personally when they met.  Following the purchases Williams would then pass the guns to Appellant.  One of the purchases was made with both

Appellant and Prince Isaac present.  (A500-504)  Williams testified that after

each purchase Appellant told her to report the guns as stolen, which she did.

(A522-523)  According to Williams, these purchases occurred in both North and

South Carolina.  (A605)

 Shanika Wilson testified that she purchased firearms on behalf of Appellant

as well.  Appellant informed Wilson that he transported the guns to New York

for resale and on two occasions she accompanied him on those trips.  (A613)  On

one of those trips they left New York and travelled to Lancaster where Wilson

stayed there for approximately one month. (A633-635)  Ms. Wilson remained

with Appellant during his stay in Lancaster and testified as a witness to his

participation in two shootings in Lancaster. Finally, Ms. Wilson testified during

trial, as well as during the pre-trial hearing, that she and Appellant traveled to

Utica New York after they left Lancaster, Pennsylvania.  (A674)  Ms. Wilson

testified that prior to leaving Lancaster she recovered a bag with narcotics and

two handguns and transported the contraband to Utica, New York.  (A677-686)

Eventually Ms. Wilson pled guilty to possession with intent to distribute the

drugs in New York.  However, Ms. Wilson testified that she transported the

narcotics on behalf of the Appellant.  (A699-700)

 Shanika Wilson also became an important witness with respect to the

search and seizure of the narcotics and firearms in Utica, New York by law
enforcement officials. In response to Appellant's challenge to the search and
seizure of the apartment in Utica, New York, the government called several law
enforcement officials. Michael Ladd, an investigator with the Oneida County
Sheriff's Department, testified that while working in the Warrant Unit in early
December, 2004 he received information from the U. S. Marshal's Service
requesting assistance in locating the Appellant. (A85-88)  On December 8, 2004
he conducted a surveillance in the area of Lansing Street in Utica, New York, as
the information he received indicated that the Appellant may be living with a
friend in that area. (A90)  During the course of his surveillance, Ladd observed
Appellant enter a corner store. He immediately decided to follow Appellant into
the store. Upon approach, Ladd asked Appellant to identify himself, to which he
replied, "Donovan Delano". (A91)  Appellant was then instructed to come
outside so that officer Ladd could determine his identity. (A92)  Ladd testified
that Appellant was handcuffed while still inside the store and prior to being
frisked. Recovered from Appellant was $347.00, a Verizon cellular phone and a
set of keys with a tag indicating an address of 705 Lansing Street.   In response
to questions regarding the address, Appellant stated that this was his girl Myrna's
house, and that the keys were hers. (A93-97)

United States Marshal Christopher Amoia testified that he had been contacted by his colleagues in the U.S. Marshal's Office in South Carolina in order to help locate Appellant. He was informed that Shanika Wilson had outstanding warrants in South Carolina and might be in the company of Appellant. (A111-112) Once Appellant was in custody, Amoia, along with approximately eight other marshals, went to 705 Lansing Street Utica New York. Upon arrival the law enforcement knocked on the door and identified themselves. Shanika Wilson answered the door. Amoia told her they needed to speak with her. According to Amoia, Ms. Wilson invited them into the apartment. (A113-124; 126) Initially Wilson was not informed that she was being sought, only that Appellant was in custody, and that they needed information from her. (A127) At first Wilson lied about her name, but eventually she informed the law enforcement of her real name. At no time did Amoia, or any of the other law enforcement officers inform Ms. Wilson that she was free to leave. Additionally Ms. Wilson was not informed that she did not have to answer any questions during the course of the interrogation. (A128) Eventually Shanika Wilson was advised of her Miranda rights and provided a verbal waiver according to Amoia's testimony. Following the verbal waiver, Wilson allegedly consented to the search of the apartment and signed the standard form. (A115-116)

6

Shanika Wilson was called as a government witness during the hearing on the motion to suppress. (A261-309) Ms. Wilson testified that when the marshals arrived at her door, they told her that they would get a warrant and arrest her if she did not let them in. (A277-279) Ms. Wilson testified she did initially sign the consent to search form. Once she was threatened with arrest, she complied. After she signed the marshals asked her which bedroom was hers and she indicated that she shared the back bedroom with Appellant. (A269) The marshals searched the room and found narcotics in plastic bags in a hat inside the bedroom. (A135) In the same closet the officers found a sweatshirt containing sixty-one (61) bags of narcotics. (A142, 146) Immediately upon discovery, the Oneida County Sheriff's Department was contacted and a search warrant was obtained. (A119) Pursuant to the search warrant, a picture in the bedroom depicting the Appellant wearing what appeared to be the same sweatshirt was also recovered as evidence. (A149) Also recovered was $2,240.00 and a box of .40 caliber ammunition in the same bedroom. In the basement of that location they found a 40 caliber handgun and a corresponding magazine, a .22 caliber handgun inside a gun case, and narcotics in various baggies inside an Intertech gun case. (A147) Packaging material, a strainer and scales were recovered as well. (A148). Shanika Wilson admitted that the drugs were hers and that she pled

guilty to drug charges in Oneida County, New York.  (A135; A290)

# SUMMARY OF THE ARGUMENT

The district court erred in permitting the introduction of evidence pursuant to a search of an apartment in Utica, New York.   Specifically drugs, guns, ammunition and drug paraphernalia were seized by United States Marshals in Utica, New York following Appellant's arrest on the street.  The seizure was predicated on the alleged consent search permitted by Appellant's former girlfriend.  It is clear from the government's own witnesses that this evidence was seized without a valid consent and therefore should have been suppressed.

The district court erred in permitting the government to admit evidence of Appellant's other crimes in other jurisdictions.  Specifically, the government sought to bolster its case against Appellant on the drug conspiracy charged in the indictment, by seeking to admit evidence that he was involved in numerous straw purchases of firearms in North, and South Carolina.  Additionally, the government sought the introduction of his possession of narcotics along with a weapon in Utica, New York in a wholly unrelated drug conspiracy. The admission of this evidence violated the Rule of Exclusion under 404(b).  It was also a violation of his rights under Federal Rule of Evidence 403 as it was so unduly prejudicial that it deprived Appellant of a fair trial.

**ARGUMENT**

I. **THE PHYSICAL EVIDENCE SEIZED AT APPELLANT'S APARTMENT IN UTICA, NEW YORK MUST BE SUPPRESSED BECAUSE SHANIKA WILSON DID NOT VOLUNTARILY GIVE CONSENT TO SEARCH THE APARTMENT, AND ANY EVIDENCE FOUND PURSUANT TO SUCH CONSENT WAS ILLEGALLY OBTAINED.**

It is axiomatic that warrantless entries into the home and searches of a home are presumptively unreasonable and violative of the Fourth Amendment of the United States Constitution.  Kyllo v. United States, 533 U.S. 27, 31 (2001); Illinois v. Rodriguez, 497 U.S. 177, 181 (1990); Payton v. New York, 445 U.S. 573 (1980); United States v. Coles, 437 F.3d 361 (3d Cir. 2006).  However, the Supreme Court recognizes that, as an exception to this rule, an occupant of a home may voluntarily consent to a search of the home, thus precluding the need for a warrant.  Schneckloth v. Bustamonte, 412 U.S. 218 (1973); United States v. Price, 558 F.3d 270 (3d Cir. 2009); Coles, 437 F.3d 361.  Voluntary consent that obviates the need for a warrant can be given by any occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained.  Georgia v. Randolph, 547 U.S. 103, 106 (2006); Rodriguez, 497 U.S. 177; United States v. Matlock, 415 U.S. 164 (1974); United States v. Morales, 861 F.2d 396, 399 (3d Cir. 1988).  When a warrantless search is carried out pursuant to an individual's

10

consent, the government bears the burden of proving that such consent was freely and voluntarily given.  Bumper v. North Carolina, 391 U.S. 543, 548 (1968); United States v. Lockett, 406 F.3d 209 (3d Cir. 2005).  A district court must determine if the consent was given voluntarily by examining the totality of the circumstances, Price, 558 F.3d at 278, and an appellate court reviews the district court's factual determinations for clear error and exercises plenary review over the application of the law to those facts.  United States v. Williams, 417 F.3d 373, 376 (3d Cir. 2005).

### A.    Appellant Has Standing To Challenge The Search of 701 Lansing Street Apartment One Because He Had A Reasonable Expectation Of Privacy In the Area Searched.[1]

Because Fourth Amendment rights are personal to individuals, in order to invoke the amendment's exclusionary rule, a defendant must demonstrate that his own rights were violated by the challenged search and seizure.  Rakas v. Illinois, 439 U.S. 128, 140 (1978); United States v. Stearn, 597 F.3d 540 (3d Cir. 2010).  A defendant's rights are violated when the

---

[1]  The "standing" inquiry is merely one element of a defendant's Fourth Amendment claim, and as such, the Third Circuit has concluded that the "standing" issue can be conceded by the government.  United States v. Stearn, 597 F.3d 540, n. 11 (3d Cir. 2010).  Moreover, the "standing" element is subject to the standard rule that "an argument not raised in the district court is waived on appeal."  Id., citing Steagald v. United States, 451 U.S. 204, 209 (1981) (warning that the government can "lose its right" to challenge "standing" "when it has made contrary assertions in the courts below ... or when it has failed to raise such questions in a timely fashion during the litigation"); and Belitskus v. Pizzingrilli, 343 F.3d 632, 645 n. 11 (3d

disputed search infringes an interest of the defendant's which the Fourth Amendment was designed to protect.  Rakas, 439 U.S. at 140.  In this case, the Appellant's right to have his home be free from an unreasonable and warrantless search was violated.

To establish standing, the party challenging the legality of the search bears the initial burden of showing that he had a reasonable expectation of privacy in the property searched and the item seized, and the individual must have manifest subjective expectation of privacy in the property searched. Minnesota v. Carter, 525 U.S. 83 (1998); Minnesota v. Olson, 495 U.S. 91, 96-97 (1990); California v. Greenwood, 486 U.S. 35, 39 (1988); Rawlings v. Kentucky, 448 U.S. 98, 104 (1980); United States v. King, 2010 WL 438417 (3d Cir. 2010); United States v. Baker, 221 F.3d 438 (3d Cir. 2000). The court must essentially do an inquiry of whether the Appellant's Fourth Amendment rights have in fact been implicated.  United States v. Mosley, 454 F.3d 249, 253 n. 5 (3d Cir. 2006).  In this case, it is clear that the Appellant had an objective and subjective expectation of privacy in his home at 701 Lansing Street and the items searched.  The Appellant was a resident of the apartment and he kept his personal belongings in the bedroom he shared with Wilson.  In fact, the first items the

---

Cir.2003).  Thus, it is Appellant's contention that in this case, the government did not raise the "standing" issue in the district court and is now precluded from making that argument on appeal.

officers found on the search were secreted in a camouflage hat at the top of the bedroom closet.  Given the fact that the items seized were not in plain view as well as the fact that they were seized from his residence, establishes that Appellant had a protected privacy interest in the area searched.

Moreover, the mere fact that it is Wilson's consent that the Appellant is challenging as involuntary does not affect the standing inquiry.  In Price, the defendant's common-law wife gave consent to search the home they both shared.  At the time of the search, the officers had the defendant in custody and his wife was aware of that fact.  Id. at 274.  The defendant in Price contested the search asserting that the consent was involuntary.  Although this Court ultimately affirmed the lower court's decision that the consent was voluntary, at no point was the defendant's standing to challenge the search at issue.  Based on Price there is no question that the Appellant had a protected privacy interest at 705 Lansing Street and therefore had a right to make a Fourth Amendment challenge in this case.

**B.    Shanika Wilson's Consent To Search The Apartment At 701 Lansing Street Was Not Voluntary And Thus The Evidence Found Pursuant To The Search Must Be Suppressed.**

To determine if an individual's consent is voluntary, the district court must look to a totality of the circumstances.  Schneckloth, 412 U.S. at 227;

Price, 558 F.3d at 278.  An examination of the totality of the circumstances

requires a look at both the characteristics of the individual giving consent as well

as the details of the investigation.  Schneckloth, 412 U.S. at 226; Price, 558 F.3d

at 278.  The court should consider the individual's age, education and

intelligence.  Price, 558 F.3d at 278.  Although law enforcement officers are not

required to inform an individual of his/her right not to grant consent, whether the

person was advised of his/her Constitutional rights is a relevant factor in the

determination of voluntariness.  Id.  Factors considered under this analysis,

include the length of the encounter, the repetition and duration of questioning,

whether the individual was in custody or under arrest, and whether the encounter

occurred in a public or secluded location.  Id.; United States v. Givan, 320 F.3d

452, 459 (3d Cir.2003); United States v. Kim, 27 F.3d 947, 955 (3d Cir.1994).

See United States v. Arciniego, 569 F.3d 394 (8th Cir. 2009).  The totality of the

circumstances also requires a court to consider any evidence of law enforcement

officers' fraud, deceit, trickery or misrepresentation that may have prompted an

individual's acquiescence to the search.  Moran v. Burbine, 475 U.S. 412, 421

(1986); United States v. Vanvliet, 542 F.3d 259, 264 (1st Cir. 2008).  The

government cannot meet its burden of proving the individual's consent was

voluntary by merely showing that an individual submitted to a claim of lawful

authority.  Florida v. Royer, 460 U.S. 491 (1983); Price, 558 F.3d at 278;

United States v. Salehi, 187 Fed.Appx. 157, 164 (3d Cir. 2006).  A careful

examination of the totality of the circumstances makes it very clear that the

consent in this case was coerced, and therefore invalid.  With the Appellant

already in custody, and armed with the information that he was residing at 705

Lansing Street, the marshals went to that location without probable cause and

without a search warrant.  It was clearly their desire to enter that location in

order to conduct a search.  Prior to their arrival, the marshals were aware that

there was a warrant already issued for Shanika Wilson and could identify her on

the spot.  Once Shanika Wilson answered the door, law enforcement should have

immediately taken her into custody and/or conducted the questioning of her at the

door without searching the apartment. It was clearly their design to force a

consent search as they did not have probable cause to obtain a search warrant for

that location at the time they arrived.  Ms. Wilson, overwhelmed by the presence

of eight armed U.S. marshals, conceded that her "consent" was coerced.

Specifically, Ms. Wilson, a cooperating government witness, testified under oath

during the hearing on the motion to suppress that the marshals informed her that

they would get a warrant and arrest her if she did not let them in.  (A277)

Furthermore she testified that they would arrest her and charge her unless she let

15

them search the apartment. (A278-279) It was only after those threats that Ms. Wilson agreed to sign the consent to search form permitting law enforcement to conduct a search of the apartment. A search that ultimately led to the seizure of the guns, drugs and drug paraphernalia. Based on the government's own evidence and witnesses the search of 705 Lansing Street in Utica, New York was coerced by U.S. marshals. They had been informed prior to arriving at that location that Appellant may be armed or in possession of firearms. Additionally they knew that there was an arrest warrant issued from South Carolina indicating that Shanika Wilson was wanted for the straw purchase of a firearm. If the marshal's sole purpose was to identify and arrest Shanika Wilson they could have done so at the door or once she properly identified herself during the course of the initial interrogation. (A114) Once that information was obtained by law enforcement the goal of their at least "pretextual" interrogation was complete. Clearly the threat of arrest unless, she submitted to the consent to search, went beyond the officers' lawful authority and was a violation of Appellant's rights under the Fourth Amendment. Under the totality of the circumstances it is clear from the record that the U. S. Marshal's violated Appellant's Fourth Amendment rights in coercing the consent to search the apartment at 705 Lansing Street, Utica, New York. As such the lower court erred in failing to grant the motion to

suppress.  All of this evidence, the guns and the drugs found in Utica, should have been excluded based on a violation of Appellant's Fourth Amendment rights.  As such we ask that this Honorable Court reverse the lower court's decision denying the motion to suppress and order a new tria.

## II.  WHETHER THE LOWER COURT ERRED IN ADMITTING THE EVIDENCE OF "OTHER CRIMES" EVIDENCED UNDER FEDERAL RULE OF PROCEDURE 404(B) AND 403 AND WHETHER SUCH ADMISSION DEPRIVED THE APPELLANT OF A FAIR TRIAL

The district court's order permitting the government to introduce evidence of Appellant's possession of the drugs and guns in Utica, New York,as well as the straw purchases of numerous guns in other jurisdictions, violated his right to a fair trial.  The government's argument, that this evidence was important to explain the role of the Appellant in the conspiracy, is belied by the testimony presented regarding his activities in Lancaster, as well as the extensive testimony spent on these other unrelated crimes.  The government had minimal evidence regarding Appellant's activities in Lancaster that indicated that he was both in the possession of firearms, and a participant in the distribution of narcotics during the short period of time he was there.  The only purpose in seeking to introduce the possession of drugs and guns in Utica, New York, as well as the numerous straw purchases, was to establish his propensity to commit crime.  After careful

examination of the existing case law as well as the rationale adopted by the

district court in admitting this evidence, it is clear that the court committed error.

### THE COURT'S DECISION TO ADMIT THE OTHER CRIMES EVIDENCE UNDER 404(B) WAS IN ERROR

The general rule is that evidence will be admitted if it is relevant. Fed. R.

Evid. Rule 402. Rule 404(b) limits the admission of relevant evidence if the

evidence relates to other charged or uncharged crimes, wrongs or acts. Such

evidence would be inadmissible to prove the character of the person charged or

in order to show that he or she acted in conformity with those other uncharged,

unrelated crimes. The general rule of exclusion is based on the concern that a

jury could infer that because a defendant had previously committed crimes or

other bad acts, that the defendant is more likely to have committed the crime

charged. United States v. Sriyuth, 98 F.3d 739 (3rd Cir. 1996).

When deciding whether to admit other acts under 404(b), a trial court must

consider two issues. First, whether evidence fits under exceptions to the 404(b)

rule of exclusion, and secondly whether under 403 the probative value outweighs

its prejudicial effect. United States v. Sampson, 980 F.2d 883 (3rd Cir. 1992);

United States v. Himelwright, 43 F.3d 777 (3rd Cir.1994);. United States v.

Jemal, 26 F.3d 1267 (3rd Cir. 1994).

An entire category of evidence presented during the course of this trial

falls under the rubric of other crimes evidence. Such evidence must be evaluated under Rule 404(b) unless the evidence is considered intrinsic to the charges in the indictment. United States v. Blyden, 964 F.2d 1375( 3rd Cir. 1992); United States v. Gibbs, 190 F.3d 188 (3rd Cir. 1999).; United States v. Cross, 303 F.3d 308 (3rd Cir. 2002).

To satisfy Rule 404(b) evidence of other acts must (1) have the proper evidentiary purpose; (2) be relevant under 402; (3) satisfy Rule 403, in other words not be substantially more prejudicial and probative; and (4) be accompanied by a limiting instruction. United States v. Butch, 256 F.3d 171 (3rd Cir. 2001). Other acts evidence satisfies the first two requirements if it is probative from a material issue other than character. Huddleston v. United States, 485 U.S. 681, 108 S. Ct. 1496, 99 L.Ed 2nd 771 (1998). United States v. Morley, 199 F.3d 129 (3rd Cir. 1999). This chain of logic must not include a link involving an inference that a bad person is disposed to do bad acts. United States v. Echeverri, 854 F.2d 638 (3rd Cir. 1998).

The government is also required to proffer a specific reason for the admissibility of such evidence and not support or rely on the blanket assertion that the evidence falls under one of the accepted reasons for its admissibility pursuant to 404(b).

As the trial court recognized Rule 404(b) does not extend to evidence of acts which are intrinsic to the charged offense. United States v. Williams, 900 F. 2d 823 (5th Cir. 1990). The D.C. Circuit explained the view of the majority of circuits, that evidence considered intrinsic is considered intrinsic if it is inextricably intertwined with the charged offense. United States v. Bowie, 232 F.3d 923 (D.C. Cir. 2000)    However, there must be some direct factual and logical connection between the conspiracy charges and the alleged other unrelated or uncharged crime . United States v. Murray, 103 F.3d 310 (3rd Cir. 1997).

Under this analysis acts which are "intrinsic" to the alleged crime do not fall under 404(b) limitations on admissibility of other crimes or "bad acts of evidence".  Courts in this and other jurisdictions, have held that acts in furtherance of a conspiracy are properly admitted as evidence of the charge conspiracy and that 404(b) is inapplicable.  United States v. Blyden, 964 F.2d 1375( 3rd Cir. 1992); United States v. Gibbs, supra.; United States v. Cross, 303 F.3d 308 (3rd Cir. 2002); Do v. United States, 513 U.S. 993, 115 S. Ct. 496, 130 L.Ed 2d 406 (1994). However, there must be some direct factual and logical connection between the conspiracy charges and the alleged other unrelated or uncharged crime. United States v. Murray, 103 F.3d 310 (3rd Cir. 1997).

In United States v. Cross, 308 F.3d 308 (3rd Cir. 2002), this Court

recognized that the distinction between acts which are intrinsic to the charged

offense and extrinsic evidence, that is other acts evidence, is often fuzzy.  In

Cross this Honorable Court states accordingly " we express no view on whether

the other acts evidence that does not directly prove an element of the charged

offense may be intrinsic (and thus exempt for Rule 404(b) if the other acts were

inextricably intertwined with the events underlying the charge, so that the

evidence is necessary for the jury to understand how the offense occurred or to

comprehend the crucial testimony." In Cross, despite the government's

contention, this Court ruled a Rule 404(b) analysis did apply and that certain acts

committed by the defendants were not intrinsic to the charges. Unfortunately the

line of demarcation between those acts which are considered extrinsic and those

which are intrinsic are frequently imposed artificially based on the scope of the

government discretion in charging.  Acts considered intrinsic are those that are

part of a single criminal episode.  United States v. Barnes, 49 F. 3d 1144 (6th

Cir. 1995).  As such an act is intrinsic to the charged act or crime in the

indictment if it is in inextricably intertwined with the charged act or crime

charged in the conspiracy. United States v. Lambert, 995 F.2d 1006 (10th Cir.);

United States v. Blyden, 964 F. 2d 1375 (3rd Cir. 1992).

     In his pre-trial ruling, the district court admitted the testimony regarding

the straw purchases from North and South Carolina, as intrinsic to the drug

conspiracy charged in the indictment.  With respect to the drugs, guns and

paraphernalia seized from Appellant's apartment in Utica, New York, the district

court failed to provide the required analysis under Rule 404(b) and Rule 403.

Each part of the district court's ruling will be addressed separately.

The straw purchasing scheme presented by both Tolanda Williams and

Shanika Williams was wholly unrelated to the criminal conspiracy that occurred

in Lancaster, Pennsylvania.  Tolanda Williams testified that she purchased four

or five different handguns for the Appellant, in both North and South Carolina.

This was supported by the testimony of another former girlfriend, Shanika

Wilson, who also stated that she purchased firearms on behalf of Appellant.  She

further testified that she accompanied him when he transported the guns to New

York for resale.  This evidence had no bearing on the activities in Lancaster.

The government argued that because some of the firearms purchased in those

jurisdictions ended up in Lancaster, and therefore intrinsic to the conspiracy.

The district court ruled that the carrying and possession of the firearms was

direct evidence of a fact at issue in the charged conspiracy.  However, the court

could have easily fashioned a ruling that would have permitted the government to

introduce evidence of the specific guns that were utilized in both shootings that

occurred in Pennsylvania.   There was simply no need to introduce evidence of

unrelated straw purchases  in order for the government to prove its case.

Nothing about the nature of the straw purchases of any of these guns, let alone

unrelated guns, that was intrinsic to the drug conspiracy.  The district court's

decision to admit the evidence of straw purchases was based on Appellant's need

to protect and retaliate against other drug gangs, as well as fight off rival drug

dealers and collect drug debts.  However nothing in the court's rationale supports

the admission of this evidence as the government already had testimony in its

case in chief indicating that Appellant was in possession of a weapon in Lancaster

and used that weapon to collect a drug debt.  Evidence of an unrelated conspiracy

to purchase guns for resale in New York is simply not intrinsic to the drug

conspiracy charge in the indictment.  The government's argument that the

evidence of these uncharged crimes should be admitted does not make any and

every gun intrinsic to the specific conspiracy charged in Lancaster.  Otherwise,

the broad application of this artificial distinction between intrinsic and extrinsic,

provides the government with unfettered discretion to allege any criminal episode

is rationally related to another, and therefore intrinsic.  This approach destroys

the gate keeping function that is the foundation of Rule 404(b).  As demonstrated

in this case the government admitted evidence of unrelated crimes, committed in

another jurisdiction, not related to the conspiracy.  Certainly anyone can come up with a rational connection between two criminal episodes and argue that they are related.  At some point this court should redraw clear lines of demarcation and return full meaning to the underlying rule of exclusion.  On this basis alone a new trial should be granted.

In addition to the evidence of the straw purchases, Appellant was forced to argue against a separate drug and gun possession conspiracy regarding the events that occurred in Utica, New York.  Following the entry into 705 Lansing Street in Utica, New York, law enforcement seized numerous items of contraband.  Specifically, law enforcement seized 61 bags of an off-white chunky substance in a Converse sweatshirt; a picture of Hynson wearing the same Converse sweatshirt; six sandwich bags; off-white chunky substance found in various ziplocks; scales; drug packaging materials; strainer; 1 Smith & Wesson, .40 caliber semi automatic pistol with one magazine containing 10 live rounds of .40 cal ammunition; 1 Intratec .22 caliber semiautomatic pistol; box of 20 rounds of .40 cal ammunition; two Western Union receipts; and $2,244. Ms. Wilson testified that she pled guilty to possession of the drugs and guns in Utica, New York yet she is not charged with any criminal conduct that occurred while she stayed with the Appellant in Lancaster, Pennsylvania.  Ironically, Appellant was

never charged with possession of the drugs and guns found in this apartment.

However, the Appellant was forced to defend against this separate criminal

conspiracy based on the guns, drugs and paraphernalia found in Utica.  The

government never articulated a specific 404(b) exception that would properly

admit this evidence in their case in chief.  Once again, the government needed

proof that Appellant and his girlfriend were in possession of one of the guns that

had been used in a shooting in Lancaster, Pennsylvania.  The Court could have

drafted an order to indicate that the gun found in Coatesville, Pennsylvania, was

the same gun possessed by Appellant in Utica, New York without introducing the

evidence of drug possession.

### THIS EVIDENCE SHOULD HAVE BEEN SEPARATELY CONSIDERED AND EXCLUDED UNDER FEDERAL RULE OF EVIDENCE 403

A standard of review of an evidentiary rule depends upon the nature of the

ruling.  To the extent that our review of the district court's Rule 404 ruling

requires us to interpret the Rules of Evidence the review is plenary but if the

evidence could be admissible in some circumstances the appellate court's  review

the district court's decision to admit the evidence of prior bad acts under Rule

404(b) is for abusive discretion.  United States v. Daraio, 445 F.3d 253 (3rd Cir.

2006); United States v. Givan, 320 F.3d 452 (3rd Cir. 2003).

Federal Rule of Evidence 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations upon due delay, waste of time, or needless presentation of cumulative evidence." It creates a presumption of admissibility. United States v. Universal Rehabilitation Services (PA), 205 F.3d 657 (3rd Cir. 2000) en banc. Evidence cannot be excluded under Rule 403 merely because it's unfair prejudicial effect is greater than its probative value. Rather evidence can be kept out only if its unfairly prejudicial effect substantially outweighed is probative value. Even highly probative evidence is subject to balancing.

Federal Rule of Evidence 403 provides that evidence although relevant may be excluded if its probative value is substantially outweighed by its unfair prejudice, confuses the issues or misleads the jury. United States v Driggs, 823 F.2d 52 (3rd Cir. 1987).

In United States v. Wong, 703 F.2d 65 (3rd Cir. 1983) this Court recognized what the First Circuit had already acknowledged which is that Rule 403 was not designed to overrule more specific rules. Rather, it was designed as a guide for dealing with situations where no specific rules have been formulated. United States v. Kiendra, 663 F.2d 349 (1st Cir. 1981).

The government's argument in support of admission of the evidence as intrinsic under the indictment does not discharge the court's requirement to evaluate the evidence under Rule 403.  In United States v. Hernandez, 975 F.2d 1035 (4th Cir. 1992) the court employed a 403 balancing analysis to reverse the district court's decision to admit evidence of defendant's prior sale of crack where the defense was that the defendant did not sell the crack involved at all and where there was no indication that the district court had carefully balanced the evidence. [See  United States v. Haas, 184 Fed. Appx. 230 (3rd Cir. 2006)] The Court evaluates the inextricably interwoven doctrine in light of the United States v. Cross, 303 F.3d 308 (3rd Cir. 2002). This Court adapts a much stricter application in that evidence that is intertwined must directly prove the charged offense in order to escape the rule.  The district court did not balance the probative value of the robbery evidence against the prejudicial effect as required under Rule 403.  It admitted the evidence solely under the determination that it was intrinsic.  Though this determination was in error this Court emphasized that even intrinsic evidence is subject to Rule 403 balancing as was explained in Cross, supra.   Although the government may prove over acts in a conspiracy which are not limited to the specific acts listed in the indictment it is well settled that the government can prove those acts as long as there is no prejudice to the

defendants.  United States v. Adam, 534 F.2d 31 (3rd Cir. 1996).   Although it is

true that Rule 404(b) evidence is probative when the charged offense involves a

conspiracy, it still must be evaluated under 403.  United States v. Cross, 308 F.3d

308 (3rd Cir. 2002).   Additionally, 403 balancing applies whether it is intrinsic or

extrinsic.  United States v. Echiverri, 854 F.2d 638 (3rd Cir. 1988). In United

States v. Sampson, 980 F.2d 83 (3rd Cir. 1992), the district court admitted two

prior drug convictions in the defendant's trial for conspiracy and possession with

intent to distribute.  The conviction was reversed as those prior convictions

should not have been admitted under 404(b) and 403. Although the decision of

whether the evidence is admitted is discretionary, the application of the rule is

not.  When the court fails to perform a 403 analysis there is no way to review

that decision without a reversal.  The record in Sampson did not disclose a 403

balancing analysis.  In Sampson the Court recognized that the trial court did

exclude a prior firearms conviction the court could not have proven that it

conducted a 403 analysis on the other convictions.  The Court noted that this case

is similar to Government of the Virgin Islands v. Pinney, 967 F.2d 912 (3rd Cir.

1992), where the court reversed a conviction because the trial court did not

explain why it was denying defendant's motion under Rule 403 and the reason

for doing so was not otherwise apparent for the record.  The Court reversed the

conviction because the trial court failed to conduct a 403 balancing determination that is whether the probative value of the evidence outweighed.  After determining that the evidence of crimes committed by cooperating co-conspirators was not within the scope of 404(b) the court analyzed the evidence under 403 concluding that it was admissible because it was probative of the existence and nature of the conspiracy and was not unduly prejudicial.   In United States v. Murray, 103 F.3d 310 (3rd Cir. 1997), the Third Circuit ruled that evidence that the defendant committed an uncharged murder was not admissible. However, even it was admissible as an uncharged crime it should have been excluded as more prejudicial than probative.  The Third Circuit in Murray reversed in part because the Rule 403 discussion was off the record in chambers and therefore beyond the record discussion for the issue and was solely based on the court's conclusory statement.  While it may have been prejudicial the evidence is also highly probative. Where there is no basis for the admission of the evidence in question the case should be reversed.  In Murray this Honorable Court found that the district court's 404(b) and 403 errors were not harmless.

It was unduly prejudicial to Appellant's right to a fair trial to admit evidence of these uncharged crimes.  Appellant was forced to argue against a drug conspiracy between he and Shanika Wilson, that existed after the alleged

conspiracy in Lancaster, Pennsylvania.  Additionally, the evidence of his illegal purchase of firearms in the south, and resale of those guns in New York, had no evidentiary purpose other than to establish his propensity to engage in other criminal acts.  Clearly the district court could have excluded that evidence, and still permitted the government to introduce the fact that he was in possession of specific guns that were used in Lancaster.  Essentially Appellant was forced to defend against two uncharged criminal conspiracies separate from the indictment in this case.  One alleged conspiracy prior to the criminal conduct set forth in the indictment, and one subsequent to those charged.  A good portion of the government's evidence against Appellant was based entirely on the testimony regarding these uncharged crimes.  The government sought to introduce this unrelated criminal conduct in an effort to bolster the evidence of his participation in the drug conspiracy in Lancaster, Pennsylvania.  The district court's decision to allow the government to present this evidence, must be weighed against the Appellant's right to a fair trial.  The district court did not conduct any 403 analysis regarding the events in Utica, New York.   The undue prejudice that occurred as a result of the admission of this evidence was overwhelming.  As such, the district court erred in permitting the introduction of this other crime evidence, depriving Appellant of his right to a fair trial.

## CONCLUSION

WHEREFORE, Appellant respectfully requests that this Honorable Court reverse the conviction, grant the motion to suppress as well as the motion in limine, and order a new trial.


Respectfully submitted,


_____
Paul J. Hetznecker, Esquire
Attorney for Appellant, Shamiek Hynson

**Date:** **May 24, 2010**

## COMBINED CERTIFICATION

## BAR MEMBERSHIP

I, Paul J. Hetznecker, Esquire, hereby certify that I am a member in good standing with the Bar of this Court.

## CERTIFICATION OF WORD COUNT

This brief is in compliance with the word count limitation of Fed. App. R. 32(a)(7)(b)  This brief contains a word count of 7,923

## ELECTRONIC FILING

The text of the electronic brief filed with the Clerk is identical to the text in the paper copies.

## VIRUS CHECK

A virus detection program has been run on the electronic file sent to the Clerk for filing and no virus was detected.

_____
PAUL J. HETZNECKER, ESQUIRE
Attorney for Appellant, Shamiek Hynson

DATE:    May 24, 2010

## CERTIFICATE OF SERVICE

I, Paul J. Hetznecker, Esquire, certify that a copy of the foregoing was served upon the following individuals on this date via U.S. Mail, postage pre-paid:

**Mark S. Miller, Esquire**
**Assistant United States Attorney**
**United States Attorney's Office**
**615 Chestnut Street, 12th Floor**
**Philadelphia, PA  19106**


_____
Paul J. Hetznecker, Esquire
Attorney for Appellant, Shamiek Hynson


Date: May 24, 2010